**Slothower & Petersen, PC**
Jim Petersen, OSB # 000025
205 NW Franklin Ave.,
Bend, OR 97701
541-318-2997
fax: 541-382-4297

Honorable Judge Albert E. Radcliffe
Chapter 13

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re:                                    )        Case No.  10-66502-aer13
                                          )
Timothy Douglas Van Horn                  )        OBJECTION TO CONFIRMATION
                                          )        OF CHAPTER 13 PLAN BY
_____Debtor._____)        HIGH DESERT BANK

  COMES NOW High Desert Bank, its successors in interest, agents & assigns ("Creditor"), and objects to confirmation of the chapter 13 plan of Timothy Douglas Van Horn.

**I  Background**

  On or about November 27, 2007, Debtor executed a Commercial Guaranty whereby Debtor absolutely and unconditionally guaranteed full and punctual payment and satisfaction of the indebtedness of Kokanee Holdings, LLC, to High Desert Bank.

  On February 18, 2010, the Circuit Court for Deschutes County entered a judgment in favor of High Desert Bank against the debtor personally in the amount $325,745.49, consisting of $304,314 principal, plus pre-judgment interest through the date of judgment. (Exhibit A). Post judgment interest through the date of bankruptcy filing amounts to $29,680.77.  Payments received from Debtor by garnishment ($1,496.34) apply to accrued interest.

  The judgment creates liens on two properties, (1) Lot 24, Airport Business Center, Phase 2, Redmond, Oregon, owned by Kokanee Holdings, LLC (the "Airport Lot"), and (2) the Tenancy in Common interest of Debtor in 19524 Sunshine Way, Bend Oregon (the "Sunshine Way Property").

## II.    The Plan Does Not Comply with §1325

Creditor objects to the proposed Chapter 13 plan because Debtor attempts to strip off the judgment lien and/or cramdown the debt owed to Creditor.  Section 1325(a)(5) permits confirmation of a plan provided that it complies with 11 USC 1325(a)(5)(A), (B), or (C).  In this case, the plan does not satisfy the requirements of 11 USC 1325(a)(5) because:

(i)    Creditor has not approved the plan as a secured creditor (§1325(a)(5)(A)),

(ii)    the plan does not provide that Creditor retains its lien on the Sunshine Way Property until the judgment is paid or discharged, (§1325(a)(5)(B)), and

(iii)    the Debtor has not surrendered his interest in the Sunshine Way Property to Creditor.  (§1325(a)(5)(C)).

## III.    Debtor has No Interest in the Airport Lot to Surrender.

Paragraph 2(b)(5) of Plan is misleading and defective.  Pursuant to 11 USC §1325(a)(5)(C), a debtor may surrender his property to a secured creditor as a condition of approval of the plan.  Here, Debtor proposes in paragraph 2(b)(5) of the plan to "surrender" the Airport Lot.  Consistently, Debtor includes Creditor's judgment from Schedule D as a secured claim as against the Airport Lot, and omits Creditor's judgment lien on the Sunshine Way Property.

Debtor, however, has no ownership interest in the Airport Lot to surrender as provided in paragraph 2.B.5 of the Chapter 13 Plan.  The Airport Lot is owned by Kokanee Holdings, LLC, in which the debtor is a member.  As of March 2010, the appraised value of the Airport Lot was $110,000 or $55,000 based on a 90-day sale.  (Exhibit B).  Although the money award provides for foreclosure and sale of the Airport Lot, Creditor agreed to allow the Kokanee Holdings, LLC, to market and sell the Airport Lot for the benefit of Creditor in order to maximize proceeds from sale.  In the current economic climate, it is unlikely that the Airport Lot will produce greater than

the average of the appraisal range. Debtor, however, attempts in paragraph 2(b)(5) to extinguish the judgment of Creditor by "surrendering" a non-existent interest, using an inflated valuation for it, and omitting the judgment lien of Creditor on Debtors' only property with equity – The Sunshine Way Property.

**IV.    Paragraph 12 of the Plan Misstates Debtor's Interest in the Sunshine Way Property**

The Sunshine Way Property is occupied by leasehold tenants holding an option to purchase. (Exhibit C; Debtor Schedule G). Debtor owns a tenancy in common interest in the Sunshine Way Property, along with Marcia Van Horn (Debtor's ex-wife), subject to a divorce decree. (See, Exhibit D). Financial encumbrances on the property amount to approximately $376,509.89. (Schedule A). The option exercise price is $795,000. (Debtor's Schedule A).

Debtor lists the value of his interest in the Sunshine Way Property on Schedule G as one-half of the option exercise price ($397,500). In fact, the Stipulated Judgment of Dissolution of Marriage provides in relevant part that proceeds of the Sunshine Way Property are distributed as follows:

d.    The Proceeds of the sale of 19524 Sunshine Way shall be dispersed as follows:

    i)    Payment of the Mortgage, closing costs, realtor fees, other encumbrances and all other costs of the sale.
    ii)   Wife shall receive $45,410 from escrow representing her share of the property located at 1942 River Mist Drive, which is being awarded to Husband.
    iii)  The parties shall equally share, on a 50/50 basis, any remaining proceeds of the sale.

Van Horn v. Van Horn, Deschutes County Circuit Court, Case No. 08-DS-0485-AB; Stipulated General Judgment of Dissolution (7/14/2008), Marital Settlement Agreement, Section 3, Page 3 of 9. A subsequent "Stipulated Supplemental Judgment RE: Sterling Savings Line of Credit" provides in relevant part as follows:

C.    At the time the Marital Settlement Agreement was signed, no liability existed on the Sterling Savings Bank line of credit #80503700090. Therefore, the line of credit was not allocated within the Marital Settlement Agreement. Subsequent to the Marital

Settlement Agreement being signed, [Debtor] withdrew $75,000 from the Sterling Savings Bank line of credit #80503700090.  The line of credit is secured by the marital residence located at 19524 Sunshine Way, Bend, Oregon which is held in joint names, and by the terms of the Marital Settlement Agreement, is to be sold.  Petitioner did not authorize or have knowledge of the withdrawal from the line of credit prior to [Debtor] taking such action.

….

    IT IS HEREBY ORDERED AND ADJUDGED as follows:

    1.    STERLING SAVINGS BANK LINE OF CREDIT.

    A.    The Sterling Savings Bank line of credit #80503700090 shall be [Debtor's] separate liability that he shall pay and hold Petitioner harmless.  The Sterling Bank line of credit shall be paid out of [Debtor's] 50% share of the proceeds of sale, and shall not be paid from Petitioner's share of the proceeds of sale.

    b.    [Debtor] and Petitioner shall sign any necessary escrow instructions for the sale of the marital residence located at 19524 Sunshine Way, Bend, Oregon to instruct the escrow company to pay the Sterling Savings Bank line of credit out of [Debtor's] share of the sale proceeds.

    c.    [Debtor] shall be solely responsible for the monthly payment on the Sterling Saving Bank line of credit pending sale of the Sunshine Way property and shall hold Petitioner Harmless from such Obligation.

<u>Van Horn v. Van Horn</u>, Deschutes County Circuit Court, Case No. 08-DS-0485-AB; Stipulated Supplemental Judgment Re: Sterling Savings Line of Credit, 8/1/2008.  Based on the foregoing, Debtor's equity in the Sunshine Way Property securing Creditor's judgment lien is approximately $138,222, calculated as follows:

Proceeds of Sale

| | | |
|---|---|---|
| Option Sale Price | $ 795,000.00 | |
| Pennymac | $ (247,034.17) | Schedule D. |
| Taxes | $ (16,000.00) | Schedule D. |
| Closing Costs (est) | $ (10,000.00) | |
| total proceeds | $ 521,965.83 | |
| to Marcia Van Horn | $ (45,410.00) | /* |
| Proceeds to be divided equally | $ 476,555.83 | |

Tim Van Horn

| | | |
|---|---|---|
| one-half of proceeds | $ 238,277.92 | |
| less Sterlings Savings Bank encumbrance | $ (100,055.72) | /** |
| equity of Tim Van Horn | $ 138,222.20 | |

Marcia Van Horn

| | | |
|---|---|---|
| one-half of proceeds | $ 238,277.92 | |
| plus equalizing payment | $ 45,410.00 | /* |
| equity of Marcia Van Horn | $ 283,687.92 | |

/* Van Horn v. Van Horn, Deschutes County Circuit Court, Case No. 08-DS-0485-AB; Stipulated General Judgment of Dissolution (7/14/2008), Marital Settlement Agreement, Section 3, Page 3 of 9.

/** Amount from Schedule D; Allocation per Van Horn v. Van Horn, Deschutes County Circuit Court, Case No. 08-DS-0485-AB; Stipulated Supplemental Judgment Re: Sterling Savings Line of Credit, 8/1/2008.

Accordingly the unsecured portion of Creditor's Judgment against Debtor amounts to approximately $215,708 calculated as follows:

| | | |
|---|---|---|
| Judgment including interest through date of filing | $ | 355,426.26 |
| collections by garnishment | $ | (1,496.34) |
| | $ | 353,929.92 |
| equity of Tim Van Horn in Sunshine Way Property | $ | (138,222.20) |
| Unsecured claim of Creditor | $ | 215,707.73 |

That is to say, even under the optimistic assumption that the Sunshine Way Property would sell at the option price of $795,000, Debtor's equity in it is significantly less than Creditor's money judgment encumbering it. Paragraph 12 of the Plan is defective because it does not recognize the actual interests of Debtor and Creditors in the Sunshine Way Property and because it proposes distribute the proceeds from its sale to the Trustee for the benefit of Debtor, without regard to the actual interest of Creditor in it – which exceeds Debtor's equity by a significant margin.

## V.     Debtor is Ineligible for Chapter 13 Relief

11 USC 109(e) allows for Chapter 13 relief only for debtors with unsecured debts of less than $360,475. Debtor avoids this limit by omitting the judgment lien of Creditor on the Sunshine Way Property, and ostensibly surrendering to Creditor the Airport Lot – which is actually owned by a separate entity, and overvaluing it. When the Airport Lot owned by Kokanee Holdings, LLC, is backed out of Schedule D, and the judgment lien of Creditor in the Tenancy in Common interest of Debtor in the Sunshine Way is included, unsecured debts exceed the statutory limit by a significant margin:

| | | |
|---|---|---|
| Unsecured claim of Creditor | $ | 215,707.73 |
| Schedule D unsecured portion of secured claims | $ | 242,080.00 |
| less adjustment to Schedule D pertaining to Airport Property (owned by Kokanee Holdings, LLC) | $ | (91,125.00) |
| Scheule E unsecured claims | $ | 33,954.86 |
| Schedule F unsecured claims | $ | 32,083.60 |
| Total unsecured claims | $ | 432,701.19 |

Additionally, because the lessors' option on the Sunshine Way Property may not be exercised, it does not necessarily reflect current market value.  To the extent the market value of the Sunshine Way Property is less than $795,000, the amount by which unsecured claims exceed the limit set forth in 11 USC 109(e) increases even further.  Mr. Van Horn is ineligible to be a chapter 13 debtor under § 109(e).  Failure to meet the eligibility requirements of § 109(e) is cause for dismissal of a chapter 13 case under § 1307(c). 8 Lawrence P. King, Collier on Bankruptcy ¶ 1307.04 (15th ed. Rev. 2001).

**VI.    The Petition and Plan Were Not Filed in Good Faith – §1325(a)(3)  and (7).**

In this case the petition fails to include Creditor's judgment as a claim against Debtor's interest in the Sunshine Way Property, even though Creditor's judgment against him is the most significant obligation of Debtor, and it is a lien on the only asset of debtor that is "above water." Notably, moreover, the failure to list the claim of Creditor as an encumbrance against Debtor's interest in Sunshine Way on Schedule D avoids the statutory limit imposed under 11 USC 109(e).

Furthermore, it appears that Debtor took out a line of credit during his divorce in July 2008 in the amount of $100,000, cashed in a life insurance policy in April 2009 for $43,000, and received approximately $78,000 from the sale of his business in May of 2008.  The funds received are not reported in the petition, and the failure to account for them is consistent with his recitation in Schedule A that he contributed only $10,000 toward his residence which is currently owned by his girlfriend, Mori Montagne.

The plan, likewise, includes an artful mischaracterization of the ownership of the Airport Lot, so as to facilitate the surrender of a non-existent interest.  This, combined with a proposed distribution of proceeds from the Sunshine Way Property which is inconsistent with actual encumbrances and interests in it, would allow Debtor to avoid the secured claim of Creditor.

1  Under the circumstances, the omissions appear to be purposeful and intended to secure approval

2  of a Chapter 13 plan that would avoid the secured claim of Creditor, and disguise the fact that

3  Debtor is not entitled to file under §109(e).

4                                          **Conclusion**

5          WHEREFORE, Creditor respectfully requests that the Court deny confirmation of the

6  proposed Amended Chapter 13 plan.

7          DATED:   December 23, 2010

8

9                                  Slothower & Petersen, PC
                                    Attorneys for Creditor, High Desert Bank

10

11                                  /s/ Jim Petersen
                                    By: Jim Petersen OSB # 000025

12

13

14

15

16

17

18

19

20

21

22

23

24

1                                      EXHIBITS

2   Exhibit A        Limited Judgment (default) Against Defendants Kokanee Holdings, LLC and Tim
                     Van Horn
3
    Exhibit B        Summary Appraisal Report for Lot 24, Airport Business Center  (Pages 1-4 of 64)
4
    Exhibit C        Lease With Option to Buy
5
    Exhibit D        Property Analysis Report
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

In the stamp:
```
...................Dec..........20.....
THE STATE OF OREGON
.......COURT....    FEB - 8 2010
Charlotte
COURT CLERK
```

# IN THE CIRCUIT COURT OF THE STATE OF OREGON
## FOR THE COUNTY OF DESCHUTES

HIGH DESERT BANK,                         )    Case No. 09CV1097MA
                                          )
                                          )    LIMITED JUDGMENT (default)
                    Plaintiff,            )    AGAINST DEFENDANTS
                                          )    KOKANEE HOLDINGS, LLC
            v.                            )    AND TIM VAN HORN
                                          )
KOKANEE HOLDINGS, LLC, an Oregon limited  )
liability company; MARCIA VAN HORN and TIM )
VAN HORN,                                 )
                                          )
                    Defendants.           )

CERTIFIED TRUE COPY OF THE ORIGINAL
Dated this 7th day of Feb 2010
CIRCUIT COURT OF THE STATE OF OREGON
FOR DESCHUTES COUNTY
By _____
COURT CLERK

THIS MATTER came before the Court on the motion of plaintiff for entry of a Limited Judgment against defendants Kokanee Holdings, LLC and Tim Van Horn. It appearing from the records that defendant Kokanee Holdings, LLC, was duly served with summons and complaint by personal service on its, registered agent, and that defendant Kokanee Holdings. LLC has not answered nor made any appearance herein although the time provided therefore has expired; And that Defendant Tim Van Horn was duly served with summons and complaint by personal service, and that defendant Tim Van Horn has not answered nor made any appearance herein although the time provided therefore has expired,

The Court having entered an order of default against defendant Kokanee Holdings, LLC, on December 11, 2009, and finding generally in favor of plaintiff and against defendant Kokanee Holdings, LLC, upon the first claim for relief against Defendant Kokanee Holdings, LLC; and The Court having entered an order of default against defendant Tim Van Horn, and finding generally in favor of plaintiff and against defendant Tim Van Horn, upon the second claim for relief against Defendant Tim Van Horn; and

EXHIBIT ___A___

PAGE ___1___ OF _4_

Page 1 of 4 – Limited Judgment (Foreclosure)

Slothower & Petersen, PC, 205 NW Franklin Ave., Bend, OR 97701 (541) 318-2997



1    The Court having determined that there is no just reason for delay pursuant to ORCP 67B

2   for entry of a limited judgment by default against defendant Kokanee Holdings. LLC. and

3   defendant Tim Van Horn:

4        IT IS HEREBY ORDERED AND ADJUDGED that plaintiff have judgment against

5   defendants Kokanee Holdings, LLC, and Tim Van Horn jointly and severally as follows:

6        1.    For judgment in the principal sum of $303,340.10, plus accrued interest in the

7   amount of $19,533.34, consisting of regular interest of $1,893.27 calculated at a rate of 7.25%

8   through August 27, 2009, and default interest of $17,640.07, calculated at a rate of 13.25% from

9   August 28, 2009, through February 1, 2010, plus $111.65 per day thereafter until the date of

10  judgment, plus interest on the foregoing principal amount at the default rate of 13.25% per

11  annum from the date of judgment, until paid in full, together with High Desert Bank's attorney

12  fees, costs and expenses incurred herein, plus the sum of $974 for the cost of a foreclosure

13  guarantee report;

14       2.    That High Desert Bank's Trust Deed be declared a valid and subsisting lien on the

15  property of defendant, more particularly described as Lot Twenty-Four (24), Airport Business

16  Center Phase 2; (Tax Account No: 204805; Map/TL: R 2-001 15-13-21-D0-00329) (the

17  "Security Property"), and superior to the interests of Defendants herein for the amount of the

18  judgment awarded in paragraph A above;

19       3.    That High Desert Bank's Trust Deed be foreclosed as to the Security Property,

20  and sold by the Sheriff of Deschutes County, Oregon, in the manner provided by law for the sale

21  of real property on execution;

22       4.    That any party to this action be allowed to bid at the foreclosure sale; that the

23  purchaser at the foreclosure sale be placed in immediate possession of the Security Property; that

24  if possession thereof is refused the purchaser, that a Writ of Assistance issue forthwith out of this

**Page 2 of 4 – Limited Judgment (Foreclosure)**

EXHIBIT _A_

PAGE _2_ OF _4_

1  Court to place the purchaser in immediate possession; that the Sheriff give to the purchaser of the

2  Security Property a Certificate of Sale, and after the time allowed by law for redemption, unless

3  the Security Property have been redeemed, a Sheriffs Deed;

4  E.    That the proceeds of sale be applied as follows:

5        1.    In payment of the costs and expenses of the sale;

6        2.    In satisfaction of the judgment awarded in Paragraph A and any subsequent

7  judgment entered against said defendants prior to the foreclosure sale for attorney fees, costs and

8  disbursements pursuant to ORCP 68;

9        3.    The balance, if any, to be paid to the Clerk of Court to be disbursed in the manner

10 provided by law;

11 F.    That if the proceeds of sale are insufficient to satisfy the judgment of High Desert Bank

12 against Kokanee Holdings, LLC, and Tim Van Horn, order that such deficiency may be enforced

13 by execution as provided by law;

14 G.    That all defendants, and all persons claiming by, through or under them as purchasers,

15 encumbrancers, or otherwise are forever foreclosed of all interest, lien or claim in the Collateral

16 and every portion thereof, excepting only any statutory right of redemption as defendants may

17 have therein;

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

EXHIBIT ___A___

PAGE __3__ OF __4__

**Page 3 of 4 – Limited Judgment (Foreclosure)**

Slothower & Petersen, PC, 205 NW Franklin Ave., Bend, OR 97701 (541) 318-2997

## MONEY AWARD

| | |
|---|---|
| Judgment creditor: | High Desert Bank<br>1000 SW Disk Drive<br>Bend, OR 97708 |
| Judgment creditor's Attorney: | Jim Petersen<br>Slothower & Petersen, P.C.<br>205 NW Franklin Ave.<br>Bend. OR 97701<br>(541) 389-7001 |
| Judgment Debtors:<br><br>Tax ID. No.: | Kokanee Holdings, LLC<br>856 NW Bond St. #1<br>Bend, OR 97701<br>xxxxx1727 |
| <br>Social Security No.: | Tim Van Horn<br>1323 35th Street NW<br>Salem, OR 97304<br>xxx-xx-7463 |
| Amount of Money Award: | $304,314.10 |
| Pre-judgment Interest: | $19,533.34, consisting of regular interest of $1,893.27 calculated at a rate of 7.25% through August 27, 2009, plus default interest of $17,640.07, calculated at a rate of 13.25% from August 28, 2009, through February 1, 2010, plus $111.65 per day thereafter until the date of judgment. |
| Post-judgment interest | 13.25% per annum simple interest calculated from the date of entry of judgment. |
| Costs: | awarded; to be determined separately |
| Attorney Fees: | to be determined separately |

Dated: _____2/01/10_____

_____
Circuit Court Judge

Submitted by:
Jim Petersen, OSB #00002
Attorney for Plaintiff
Dated: _2-8-2010_

**Page 4 of 4 – Limited Judgment (Foreclosure)**

EXHIBIT _____A_____

PAGE __4__ OF __4__

# *SUMMARY APPRAISAL REPORT*

Lot 24, Airport Business Center
6th Street
Redmond, Oregon
Date of Appraisal: March 31, 2010

## *PREPARED FOR:*

High Desert Bank
Mr. Bruce Stephenson, SVP/COO
1000 SW Disk Drive
Bend, Oregon 97702-1994

## *PREPARED BY:*

Cascade Commercial Appraisal Services, LLC
Darrell W. Deglow, MAI
Member, Appraisal Institute
Julie M. Deglow
Certified General Appraiser
61174 SW Hubble Street
Bend, Oregon  97702
541-388-3104

Exhibit B-1



Julie M. Deglow
State Certified General Appraiser
juliedeglow@bendbroadband.com

Darrell W. Deglow, MAI
Member, Appraisal Institute
ddeglow@bendbroadband.com

March 31, 2010

High Desert Bank
Mr. Bruce Stephenson, SVP/COO
1000 SW Disk Drive
Bend, Oregon 97702-1994

> Re:    Lot 24, Airport Business Center
> Redmond, Oregon

Dear Mr. Stephenson:

Pursuant to your assignment and request of March 30, 2010 (a copy of which is attached hereto and incorporated herein by this reference), I have completed a Summary Appraisal Report of the property identified as the **Industrial Lot** and located at **Lot 24, Airport Business Center, Redmond, Oregon**. This property is legally described in the body of the attached appraisal report.

This is a Summary Appraisal Report which is intended to comply with the reporting requirements set forth under Standards Rule 2-2(b) of the Uniform Standards of Professional Appraisal Practice for a Summary Appraisal Report. As such, it presents only summary discussions of the data, reasoning, and analysis that were used in the appraisal process to develop the Appraiser's opinion of value. Supporting documentation concerning the data, reasoning, and analyses is retained in the Appraiser's file. The depth of discussion contained in this report is specific to the needs of the client and for the intended use stated below. The Appraiser is not responsible for unauthorized use of this report.

The effective date of appraisal is March 31, 2010. The date of appraisal is March 31, 2010. There are no conditions in this appraisal assignment which would require a prospective or retrospective valuation analysis. Therefore, the effective appraisal date is contemporaneous with the date of appraisal.

Mr. Bruce Stephenson
March 31, 2010
Page 2

The purpose of this appraisal was to estimate the market value of the subject property, in fee simple interest, under market conditions existing as of March 31, 2010. This appraisal report does not reflect value of any personal property or intangible assets. This appraisal report involves the value of the real property only. The subject property consists of an undeveloped, light industrial zoned, site. The property is not improved.

Transmitted herewith is my Summary Appraisal Report complying with the Uniform Standards of Professional Appraisal Practice of the Appraisal Standards Board, the Standards of Professional Appraisal Practice of the Appraisal Institute and the current FIRREA requirements as requested in your appraisal authorization letter in which you will find it is my opinion the indicated *MARKET VALUE* of the subject property, in fee simple interest, in "as is" condition, at the time of inspection, subject to the Assumptions and Limiting Conditions as set forth in this appraisal, under market conditions existing as of March 31, 2010, was:

*ONE HUNDRED TEN THOUSAND DOLLARS*
*($110,000)*

And, it is my opinion that the indicated market value of the subject property based, on a *90 day marketing period,* in fee simple interest, in "as is" condition, at the time of inspection, subject to the Assumptions and Limiting Conditions and Extraordinary Assumptions as set forth in this appraisal, as of March 31, 2010 was:

*FIFTY FIVE THOUSAND DOLLARS*
*($55,000)*

*The Appraiser has not been supplied with, nor reviewed, a current preliminary title report which would reveal the presence of any potential easements or encroachments which would impact the development potential or value of the subject property. The Client is urged to secure a title report in order to determine any probable impact. The value recited herein is based on the Extraordinary Assumption that the subject property is free from any adverse easements, encroachments or title defects that would render the property less valuable and that title can pass in fee simple interest.*

The basis for this conclusion is explained in detail in the contents of the attached appraisal report. This letter must remain attached to the report, which contains 59 pages plus related exhibits, in order for the value opinion set forth to be considered valid.

_____ *Cascade Commercial Appraisal Services, LLC* _____

Mr. Bruce Stephenson
March 31, 2010
Page 3

It has been a pleasure to serve your appraisal needs. If you should have any questions regarding this report, or need any further assistance or clarification, please feel free to contact my office at your earliest convenience.

Sincerely,

Darrell W. Deglow, MAI
Member, Appraisal Institute
Oregon State Certified Appraiser License #C000143
Expiration May 31, 2010

Enclosure

_____Cascade Commercial Appraisal Services, LLC_____

Exhibit B-4

DESCHUTES COUNTY JUDICIAL RECORDS
NANCY BLANKENSHIP, COUNTY CLERK        2009-36667

$71.00

0068705520090036667008008O

D-LE  Cnt=2  Stn=30  JS          08/25/2009 03:47:20 PM
$40.00 $5.00 $11.00 $10.00 $5.00

After Recording Return To:
Graham Hausler and Heidi Hausler
501 NW State Street
Bend Oregon 97701

7061- 1458310

## LEASE WITH OPTION TO BUY

**Parties:**

| | |
|---|---|
| Marcia S. Van Horn | "Lessor/Seller" |
| and | |
| Timothy Douglas Van Horn | "Lessor/Seller" |
| | |
| Graham and Heidi Hausler | "Lessee/Buyer" |

This Lease Agreement is entered into on _D8_ / _19_ , _2009_ between Seller and Buyer. For ease of reference, the designation of Lessor shall be referred to as "Seller" and the designation Lessee shall be referred to as "Buyer."

**Recitals:**

In consideration of the mutual covenants and conditions contained herein and other good and valuable consideration, the receipt of which is herby acknowledged, and intending to be legally bound hereby, the parties hereto agree as follows:

Seller shall lease to Buyer the property located at: **19524 Sunshine Way, Bend, Oregon 97702,**

**Which has a Legal Description of:**

### Lot 4 Block 26 WEST KNOLL SECTION OF SUNRISE VILLAGE
### Deschutes County, Oregon

On the terms and conditions stated below:

Section 1.    Seller Representations.

Seller makes the following representations and warranties to Buyer: (1) Seller currently has marketable title to the Property, subject only to those easements, liens and deed restrictions currently of record ("the encumbrances"); (2) All of the encumbrances are current and free from default; (3) Seller has not received any notices from the holders of any of the encumbrances that they are or will be in default; (4) Sellers agree that they will not voluntarily encumber marketable title to the Property prior to termination of this Option Deadline without first securing written consent of the Buyer. This shall not prohibit the assessment of normal property taxes which the Seller will pay in the ordinary course up to the date of closing, if applicable, nor prohibit any

Recorded by First American Title
as an accommodation only. No
liability is accepted for the condition
of title or validity, sufficiency, or
effect of this document.

EXHIBIT _____C_____

PAGE __1__ OF __14__

encumbrances that will not unreasonable interfere with Seller's ability to convey marketable title to Buyer in accordance with the Earnest Money and Sales Agreement, which is attached as Exhibit _____ and made a part hereof.

Section 2.    Term of Lease: Option to Extend.

The term of this lease shall be for twelve (12) months. This lease shall commence on _09/01_____, _2009_ and end _09/01_____, _2010_. If Buyer is not in default, Buyer can elect to extend the lease and option for two (2) six-month periods. Buyer must notify Seller, in writing, 30 days prior to the end of the previous lease term. All conditions and terms of the original lease term shall apply to any extended term.

Section 3.    Possession.

Buyers shall be entitled to possession under this lease on **September 1, 2009**.

Section 4.    Rents, Utilities and Other Charges.

Buyers shall pay to Sellers as rent the sum of $2,350.00 per month. Rent shall be payable on the first day of each month in advance to Seller at the following address:

Deposit Rent Payable to Marcia S. Van Horn into
Bank of the Cascades Home Advantage Account Number: 5502764

$1,175.00 per month shall be applied to the down payment of the purchase of the property if the option is exercised. If the option is not exercised by Buyer, the deposit shall be returned to Seller. If Seller does not allow Buyer to purchase the Property, and Buyer has properly exercised option, then the deposit shall be returned to Buyer.

A Late Fee of $150.00 will be assessed for rent received after the 5th of the month.

Section 4.1    Utilities.

Buyers shall pay as due the cost of all utilities used by Buyers on premises.

Section 4.2    Other Charges.

Seller shall maintain property insurance on the Property. Buyer will pay all Home Owners' Association fees and will enjoy all benefits of the homeowners. Buyer shall also maintain renter's insurance for all personal property.

Section 5    Intended Use/Permitted Use.

The premises shall be used as a dwelling unit and for no other purpose.

EXHIBIT ___C___

PAGE _2_ OF _14_

Section 6       Alteration.

Buyers shall not make or permit any alterations to be made on the premises following the date of execution of this Residential Lease without the prior written consent of Seller.

Section 7.      Repairs and Maintenance.

Buyers shall maintain the premises, including the yard, in neat and clean condition irrespective of the condition of the premises as of the date of actual occupancy. Buyers shall replace all broken glass during the term of this lease, regardless of cause, and shall make any repairs necessitated by the negligence or willful act of Buyers or Buyers' invitees.

Buyers agree to notify Seller promptly of all required repairs and Buyers consent to the entry of Seller on the premises as required to make repairs without notice. Buyers shall be responsible for testing all smoke detectors regularly to confirm proper function and shall notify Seller of any malfunctioning of any such device.

Section 8.      Seller's Right of Access.

Seller, or Seller's agent, shall have the reasonable right to enter the premises in order to inspect the premises, make necessary or agreed repairs, decorations, alterations or improvements, supply necessary or agreed services, serve notices required or permitted under any law or exhibit the dwelling unit to a prospective or actual purchasers, mortgagees, Buyers, workers or contractors. Buyers shall not unreasonably withhold consent for Seller or Seller's authorized agent to enter the dwelling unit or any portion of the premises under Buyers' exclusive control for the purposes set forth in sections five or six.

Seller shall notify Buyers 24-hours in advance, except in the event of emergencies or repairs, of Seller's intent to enter the premises. In the event of repairs, Buyers agree that Seller or Seller's agent may enter at any reasonable time without notice. In the event of an emergency, Seller may also enter the premises without providing prior notice.

Section 9.      Fire and Theft Insurance.

Buyers shall bear the expense of any insurance insuring the personal property of Buyers on the premises against such risks as fire and theft and other casualty covered by a fire and theft insurance policy. Seller shall have no responsibility to Buyers for the loss of Buyers' personal property irrespective of the cause of any such loss.

Section 10.     Liability to Third Persons.

Except with respect to activities for which Seller is responsible Buyers shall pay as due all claims for work done and for services rendered or material furnished to the premises at the request of Buyers and shall keep the premises free from any lien caused by Buyers' failure to meet Buyers' obligations. Buyers shall indemnify and hold Seller harmless from any claim, loss

EXHIBIT ___C___

PAGE __3__ OF _14_

or liability arising out of or related to any activity on the premises of Buyers or any person who comes on the premises at the invitation or with the acquiescence of Buyers.

Section 11.   Damage and Destruction.

In the event that the premises are damaged or destroyed by fire or other casualty, Seller may at Seller's option terminate the lease. In lieu of terminating the lease, Seller may elect within 30-days after the damage occurred to repair the damage and continue the lease. If Seller elects to repair, Seller shall have exclusive possession of said premises as may be required to effect the repairs and Buyers shall be entitled to an abatement of rent or a fair portion thereof until the premises has been made fit for occupancy and use.

Section 12.   Quiet Enjoyment.

Seller warrants that Seller is the owner of the premises and that Seller has the right to lease them and that Buyers shall be entitled to quiet enjoyment of them during the lease term as described herein.

Section 13.   Assignment and Sublease.

No part of the premises may be assigned, mortgaged or subleased nor may a right of use of any portion of the property be conferred on any third person by any other means without the prior written consent of Seller.

Section 14.   Remedies.

The remedies of Seller for breach of this lease shall specifically include, but not be limited to the remedies set forth in the following sections:

Section 15.   Default.

In the event of breach by Buyers of any term of this lease, all of which Buyers agree are material, Seller shall have each and every remedy available at law or in equity which shall specifically include but not be limited to the following:

15.1 Non Payment of Rent/Notice. Buyers must pay rent in exactly the manner described in Section 4 of this agreement. Failure by Buyers to pay rent in the exact manner described in section 4 shall constitute non payment of rent. In the event of non payment of rent by Buyers, Seller shall exercise all legal rights available to him, including those set forth in ORS 90.400.

EXHIBIT _____C_____

PAGE __4__ OF _14_

15.2    Other Breaches. In the case of any other material non-compliance by Buyers of the terms of this lease or any other non-compliance with ORS 90 materially affecting health and safety, Seller may deliver a written notice to Buyers specifying the acts or omissions constituting the breach and that the lease will terminate on a date not less than 30-days after mailing of the notice if the breach is not remedied.

Section 16.    Option to purchase

16.1    Subject to the terms and conditions contained in this agreement, Seller hereby grants Buyer the option ("Option") to purchase the property described above. So long as Buyer is not in default under the terms of this agreement, Buyer may exercise the option to purchase at any time during the term or sooner of this agreement.

16.2    Exclusivity of Option. This option to purchase is exclusive and non-assignable. Any attempted assignment, delegation, transfer or conveyance of this option to purchase without the Seller/Seller's express written permission is void.

16.3    Notice Required to Exercise Option. Buyer may only exercise this option to purchase by delivering written notice of intent to purchase to Seller. Such notice must specify a closing date to occur prior to _6 9_/_0 1_____,_2-01.0_

16.4    Option Consideration.    Seller acknowledges receipt of the consideration for the Option in the sum of $40,000.00, which is to be deposited in an Escrow account, as described in the Earnest Money and Sales Agreement. $20,000.00 shall be immediately released to Seller and be non-refundable. The remaining $20,000.00 will be released to Seller immediately, but shall be refundable (or partially refundable) if Buyer does not exercise the Option to Purchase. Sellers agree that any amount due back to Buyers as refundable Option Consideration will be paid in full within 10 days of Buyers moving out of the property. If Sellers do not pay the entire amount due within this time period, Sellers have the right to exercise any legal remedies available to them by law, including, but not limited to, judgment. In the event Buyers timely exercise this Option, are not in default of the Lease Agreement and actually closes the conveyance of the Property, the entire option consideration of $40,000.00 shall be credited to the purchase price at closing. It is understood that Buyer may terminate this lease agreement prior to the end of the term. Buyer must give Seller thirty (30) days notice, in writing, if Buyer intends on terminating tenancy prior to the end of the lease term. If Buyer terminates the lease prior to the end of the term of this Agreement, then the following shall apply:

(a)    If Buyer terminates lease between 1 months-3 months of tenancy, then Seller is entitled to retain 25% of the Option Consideration.
(b)    If Buyer terminates lease between 3-6 months of tenancy, then Seller is entitled to retain 50% of the Option Consideration.
(c)    If Buyer terminates lease between 6-9 months of tenancy, then Seller is entitled to retain 75% of the Option Consideration.
(d)    If Buyer terminates lease between 9-12 months of tenancy, then Seller is entitled to retain 100% of the Option Consideration.

EXHIBIT ___C___

PAGE __5__ OF _14_

16.5    Purchase Price. The total purchase price for the Property pursuant to this Option to Purchase Agreement is $790,000.

16.6    Closing and Settlement. Closing and settlement shall be at a title company designated by the Seller. All closing costs and any points, fees and/or charges imposed by the Buyers' lender shall be the sole responsibility of the Buyer. Seller shall only be responsible for its pro-rated share of the *ad valorem* taxes due as of the date of closing. IT IS THE BUYER/BUYERS' SOLE RESPONSIBILITY TO ARRANGE FINANCING FOR THE TRANSACTIONS. SELLER/SELLER HAS MADE NO REPRESENTATIONS TO BUYER/BUYERS REGARDING THE AVAILABILITY OF FINANCING OF BUYER/BUYERS' ABILITY TO QUALIFY FOR FINANCING.

16.7    Remedies. (a) In the event of any such default by Buyers of this Option to Purchase Agreement or the Lease Agreement, then in addition to any other remedies available to Seller at law or in equity, Buyers Option to purchase shall automatically terminate, and become null and void.

16.8    Commissions. There will be no real estate commissions paid as a result of this transaction for the representation of Buyer. Buyers represents themselves in this transaction.

16.9    Modifications. Any modification of any portion of this Option to Purchase Agreement must be made in writing signed by both parties.

16.10   References in Wording. Plural references made to the parties involved in this Option to Purchase Agreement may also be singular, and single references may be plural. These references may also apply to Seller/Seller and Buyer/Buyers heirs, executors, administrators, successors as the case may be.

16.11   Time of Performance. Time is of the essence in this Option to Purchase Agreement.

16.12   Assumption of Risk. The parties to this Option to Purchase Agreement acknowledge that speculation of availability of financing or assumption of existing loans towards the purchase of this property is impossible to predict. Therefore the parties agree that these items shall not be a condition of performance of this Option to Purchase Agreement, and the parties agree they have not relied upon any representation or warranties by either parties.

(a) Buyer and Seller each acknowledge that if there are one or more underlying liens currently on Property, they may contain prohibitions against renting the Property and/or granting an option to purchase, without the lender's consent. Both parties acknowledge that there is a risk that one or more of the lenders could call the loan immediately due and owning. Should such events occur, the parties agree that: Buyer shall have immediate right to exercise the Option, and Sellers should take reasonable steps to refinance the encumbrances and cure any default.

EXHIBIT _____C_____

PAGE __6__ OF __14__

16.13    Acknowledgement. The undersigned Buyers hereby acknowledge that they have read this Option to Purchase Agreement, understand it, agree to it and have been given an executed copy. This Option to Purchase Agreement is not to be recorded in the property records unless express permission is granted by the Seller. Buyers were advised, and had opportunity to, seek advice of legal, tax, technical expertise professionals of their own selection and any other counsel of their choosing concerning this contract prior to signing.

Section 17.    Miscellaneous.

17.1    Non-Waiver. Waiver by either party of strict performance of any provision of this lease including acceptance by Seller of late payment of rent shall not be a waiver of or prejudice that party's right to require strict performance of the same provision in the future or of any other provision.

17.2    Attorney's Fees and Costs. If this lease is placed in the hands of an attorney due to a default of payment or performance of any of its terms the defaulting party shall pay immediately upon demand the other attorney's actual fees and expenses together with reasonable attorney's fees irrespective of whether suit or action is filed.

17.3    Entirety of Agreement. This document is the entire final and complete agreement of the parties pertaining to the lease and supersedes and replaces all written and oral agreements heretofore made or existing by and between the parties or their representatives.

17.4    Modification. No modification of this lease shall be valid unless in writing and signed by the parties hereto.

17.5    Venue. This lease shall be governed by the laws of the State of Oregon and any action respecting this lease shall be had in Deschutes County, Oregon.

17.6    Severability. If any provision or provisions of this Agreement shall be held to be invalid, illegal, unenforceable or in conflict with the law of any jurisdiction, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

17.7    Delivery of Notices. Any notice required by this lease or law shall be delivered by certified mail or by any other service method allowed by the Oregon Rules of Civil Procedure Rule 7. All notices shall be deemed delivered upon the earlier of actual receipt by a party or three days following deposit in the U. S. Mail certified receipt request.

EXHIBIT _C_

PAGE _7_ OF _14_

DATED THIS _19th_ day of _August_, 2009

**SELLERS:**                                    **BUYERS:**

_Marcia S. Van Horn_                            _[signature]_
MARCIA S. VAN HORN                              GRAHAM HAUSLER

_[signature]_                                   _[signature]_
TIMOTHY DOUGLAS VAN HORN                         HEIDI HAUSLER

STATE OF Oregon                  )
                                 )ss.
County of  Deschutes             )

This instrument was acknowledged before on this _19th_ day of _August_, 20_09_ by MARCIA S. VAN HORN.

OFFICIAL SEAL
TRACIE RENEE HAYDEN
NOTARY PUBLIC-OREGON
COMMISSION NO. 436407
MY COMMISSION EXPIRES FEB. 27, 2013

_[signature]_
Notary Public for Oregon
My Commission Expires: Feb. 27, 2013

STATE OF Oregon                  )
                                 )ss.
County of  POLK                  )

This instrument was acknowledged before on this _20th_ day of _AUGUST_, 20_09_ by TIMOTHY DOUGLAS VAN HORN.

OFFICIAL SEAL
JORDAN M WILLEY
NOTARY PUBLIC - OREGON
COMMISSION NO. 8402743
MY COMMISSION EXPIRES FEBRUARY 23, 2010

_[signature]_
Notary Public for Oregon
My Commission Expires: 02/23/2010

STATE OF Oregon                  )
                                 )ss.
County of  Deschutes             )

This instrument was acknowledged before on this _19th_ day of _August_, 20_09_ by GRAHAM HAUSLER AND HEIDI HAUSLER.

OFFICIAL SEAL
TRACIE RENEE HAYDEN
NOTARY PUBLIC-OREGON
COMMISSION NO. 436407
MY COMMISSION EXPIRES FEB. 27, 2013

_[signature]_
Notary Public for Oregon
My Commission Expires: Feb. 27, 2013

EXHIBIT ___C___

PAGE _8_ OF _14_

DESCHUTES COUN., f OFFICIAL RECORDS
NANCY BLANKENSHIP, COUNTY CLERK

**2010-38096**



$78.00

0074831920100038085006060066

09/27/2010 03:45:36 PM

D-LE  Cnt=2  Stn=1  BN
$30.00 $5.00 $11.00 $16.00 $10.00 $6.00

Do not remove this page from original document.

# Deschutes County Clerk

# Certificate Page



EXHIBIT ___C___

PAGE __9__ OF __14__

# Lease With Option to Buy

## 19524 Sunshine Way, Bend, OR 97702

## Extension

### Parties:

| | |
|---|---|
| Marcia S. Van Horn | "Lessor/Seller" |
| Timothy Douglas Van Horn | "Lessor/Seller" |
| Graham and Heidi Hausler | "Lessee/Buyer" |

Pursuant to the Recitals, Section 2. "Term of Lease: Option to Extend", the Buyers have elected to extend the lease agreement for a period of one year. This extension shall commence on **September 1, 2010** and end **September 1, 2011**. *All conditions and terms of the original lease term shall apply to the extended term.*

The original lease agreement has been filed with the Deschutes County Records, Nancy Blankenship, County Clerk, Document #2009-36667, dated 08/25/2009.

Dated this _____ 1 st _____ day of September, 2010.

SELLERS:                                          BUYERS:

_____          _____
Marcia S. Van Horn                            Heidi Hausler

_____          _____
Timothy Douglas Van Horn                  Graham Hausler

Recorded by First American Title
as an accommodation only. No
liability is accepted for the condition
of title or validity, sufficiency, or
effect of this document.

EXHIBIT ___C___

PAGE _12_ OF _14_

AFTER RECORDING RE RN TO:
GRAHAM AND HEIDI HAUSLER
19504 SUNSHINE WAY
BEND, OR 97702

## Lease With Option to Buy

## 19524 Sunshine Way, Bend, OR 97702

## Extension

### Parties:

| | |
|---|---|
| **Marcia S. Van Horn** | "Lessor/Seller" |
| **Timothy Douglas Van Horn** | "Lessor/Seller" |
| **Graham and Heidi Hausler** | "Lessee/Buyer" |

Pursuant to the Recitals, Section 2. "Term of Lease: Option to Extend", the Buyers have elected to extend the lease agreement for a period of one year. This extension shall commence on **September 1, 2010** and end **September 1, 2011.** *All conditions and terms of the original lease term shall apply to the extended term.*

The original lease agreement has been filed with the Deschutes County Records, Nancy Blankenship, County Clerk, Document #2009-36667, dated 08/25/2009.

Dated this _____ day of September, 2010.

SELLERS:                                        BUYERS:

_____          _____
Marcia S. Van Horn                           Heidi Hausler

_____          _____
Timothy Douglas Van Horn                Graham Hausler

EXHIBIT ___C___

PAGE _11_ OF _14_

STATE OF    Oregon                )
                                  )ss.
County of   Deschutes             )

This instrument was acknowledged before me on this _13_ day of _September_, 20_10_
by **Marcia S. Van Horn**.

OFFICIAL SEAL
CHERYL J SCOTT
NOTARY PUBLIC-OREGON
COMMISSION NO. 450540
MY COMMISSION EXPIRES AUGUST 07, 2014

_Cheryl J. Scott_

Notary Public for Oregon
My commission expires:    8- 7- 2014

STATE OF    Oregon                )
                                  )ss.
County of                         )

This instrument was acknowledged before me on this _____ day of _____, 20____
by **Timothy Douglas Van Horn**.

Notary Public for Oregon
My commission expires:

STATE OF    Oregon                )
                                  )ss.
County of   Deschutes             )

This instrument was acknowledged before me on this _17_ day of _September_, 20_10_
by ~~Graham Hausler and~~ **Heidi Hausler**.

_Cheryl J. Scott_

OFFICIAL SEAL
CHERYL J SCOTT
NOTARY PUBLIC-OREGON
COMMISSION NO. 450540
MY COMMISSION EXPIRES AUGUST 07, 2014

Notary Public for Oregon
My commission expires:    8- 7-2014

EXHIBIT _C_

PAGE _12_ OF _14_

STATE OF     Oregon                    )
                                       )ss.
County of     Deschutes                )

This instrument was acknowledged before me on this _13_ day of _September_, 20_10_
by **Marcia S. Van Horn.**

> OFFICIAL SEAL
> **CHERYL J SCOTT**
> NOTARY PUBLIC-OREGON
> COMMISSION NO. 450540
> MY COMMISSION EXPIRES AUGUST 07, 2014

_Cheryl J. Scott_
Notary Public for Oregon
My commission expires:     _8-7-2014_

STATE OF     Oregon                    )
                                       )ss.
County of _Marion_                     )

This instrument was acknowledged before me on this _21_ day of _September_, 20_10_
by **Timothy Douglas Van Horn.**

> OFFICIAL SEAL
> **KURT S GOESCH**
> NOTARY PUBLIC -- OREGON
> COMMISSION NO. 443383
> MY COMMISSION EXPIRES OCTOBER 13, 2013

_Kurt Goesch_
Notary Public for Oregon
My commission expires:

STATE OF     Oregon                    )
                                       )ss.
County of     Deschutes                )

This instrument was acknowledged before me on this _17_ day of _September_, 20_10_
by ~~Graham Hausler and~~ **Heidi Hausler.**

> OFFICIAL SEAL
> **CHERYL J SCOTT.**
> NOTARY PUBLIC-OREGON
> COMMISSION NO. 450540
> MY COMMISSION EXPIRES AUGUST 07, 2014

_Cheryl J. Scott_
Notary Public for Oregon
My commission expires:     _8-7-2014_

EXHIBIT ___C___

PAGE _13_ OF _14_

**NOTARY ACKNOWLEDGEMENT**
**ATTACHED TO DOCUMENT**

File No: ()                                                            Date:

STATE OF     Oregon                    )
                                        )ss.
County of    Deschutes                 )

This instrument was acknowledged before me on this _14_ day of _September_, 20_10_
by **Graham Hausler**.

_Cheryl J Scott_
Notary Public for Oregon

My commission expires:   _8-7-2014_

---

OFFICIAL SEAL
**CHERYL J SCOTT**
NOTARY PUBLIC-OREGON
COMMISSION NO. 450540
MY COMMISSION EXPIRES AUGUST 07, 2014

---

EXHIBIT ___C___
PAGE _14_ OF _14_



**AmeriTitle**

15 OREGON AVE PO BOX 875
BEND, OR 97709
(541) 389-7711 * Fax (541) 389-7711

## PROPERTY ANALYSIS REPORT

Requested By:  High Desert Bank

| | |
|---|---|
| Borrower's Name | : Tim D. Van Horn and Marcia S. Van Horn |
| Property | : 19524 Sunshine Way, Bend, Oregon 97702 |
| Legal Description | : Lot Four (4), Block Twenty-six (26), WEST KNOLL SECTION OF SUNRISE VILLAGE, recorded July 16, 1980, in Cabinet B, Page 763, Deschutes County, Oregon. |
| The Last Deed of Record Runs To | : TIM D. VAN HORN and MARCIA S. VAN HORN |
| Deed/Contract | : Recorded March 28, 2002, as Instrument No. 2002, 17224, Deschutes County , Records |

SEE ATTACHED DESCHUTES COUNTY PROPERTY TAX PRINT OUT FOR ASSESSMENT INFORMATION

Monetary Liens Noted:

Taxes assessed under Code No. 1-087 Map and Tax Lot Number 18 11 12DC 03500
Account No. 163255

1.  The 2009-2010 Taxes:  $9,862.26, (Balance due $5,619.01)
    (Includes $66.25 Fire Patrol)

2.  Deed of Trust, including the terms and provisions thereof, to secure an indebtedness of the amount herein stated.
    Amount:              $175,000.00
    Dated:               May 7, 2003
    Recorded:            May 13, 2003
    Instrument No.:      2003-31864, Deschutes County Records
    Grantor:            Tim D. Van Horn and Marcia S. Van Horn, as tenants by the entirety
    Trustee:            Pacific Cascades Financial, Inc.
    Beneficiary:        Klamath First Federal Savings and Loan Association
    **(Said Deed of Trust is a Line of Credit Deed of Trust)**

    The lien of the above Deed of Trust was subordinated to the lien of the Deed of Trust shown as exception No.4
    below by instrument,
    Dated:               March 26, 2009
    Recorded:            April 17, 2009
    Instrument No.:      2009-15931, Deschutes County Records

EXHIBIT ____D____

PAGE __1__ OF __4__

Order No. 122889-43
Page 2

3.  Terms and provisions of the Decree of Dissolution of Marriage and Property Settlement Agreement when incorporated therein in the Circuit Court for Deschutes County, Oregon.
    Suit No.:            08-DS-0485-AB
    Entered:            July 14, 2008
    Petitioner:         Marcia S. Vanhorn
    Respondent:         Timothy D. Vanhorn
    Supplemental Judgment entered August 4, 2008

4.  Deed of Trust, including the terms and provisions thereof, to secure an indebtedness of the amount herein stated.
    Amount:            $255,334.00
    Dated:             April 7, 2009
    Recorded:          April 17, 2009
    Instrument No.:    2009-15930, Deschutes County Records
    Grantor:           Tim D. Van Horn and Marcia S. Van Horn
    Trustee:           Western Title & Escrow
    Beneficiary:       Bank of the Cascades Mrtg. Center

5.  Lease with Option to Buy, including the terms and provisions thereof, between Tim D. Van Horn, Lessor/Seller and Marcia S. Van Horn, Lessor/Seller and Graham and Heidi Hausler, Lessee/Buyer, recorded August 25, 2009, in Volume 2009, Page 36667, Deschutes County Records.

6.  Judgment in the State Circuit Court, County of Deschutes, for the amount herein stated and any other amounts due.
    Creditor:          High Desert Bank
    Debtor:            Tim Van Horn also known as Tim VanHorn
    Amount:            $304,314.10; $19,533.34
    Entered:           February 18, 2010
    Case No.:          09CV1097MA

    Judgment in the State Circuit Court, County of Deschutes, for the amount herein stated and any other amounts due.
    Creditor:          High Desert Bank
    Debtor:            Kokanee Holdings LLC
    Amount:            $2,975.00; $2,081.00
    Entered:           March 10, 2010
    Case No.:          09CV1097MA

7.  Limited Judgment, including the terms and provisions thereof, between High Desert Bank, Plaintiff, and Kokanee Holdings, LLC, an Oregon Limited Liability Company; Marcis Van Horn and Tim Van Horn, Defendants, recorded March 11, 2010, as Instrument No. 2010-10251, Deschutes County Records.

NOTE: Any map or sketch enclosed as an attachment herewith is furnished for information purposes only to assist in property location with reference to streets and other parcels. No representation is made as to accuracy and the company assumes no liability for any loss occurring by reason of reliance thereon.

EXHIBIT _____D_____

PAGE __2__ OF __4__

Order No. 122889-43
Page 3

NOTE: THIS IS NOT A TITLE REPORT, A COMMITMENT TO ISSUE TITLE INSURANCE OR A
GUARANTEE OF ANY KIND. No liability is assumed with this report. Our search was limited to our tract
indices and no examination of the public record was made. The fee charged for this service does not include
supplemental reports or other services. Further dissemination of the information in this report in a form
purporting to insure title to the herein described land is prohibited by law.

**AmeriTitle**


By: _Hope Bridges_
    Hope Bridges, Title Officer
    HB:kg

*"Superior Service with Commitment and Respect for Customers and Employees"*

EXHIBIT __D__

PAGE __3__ OF __4__



N

COMPLIMENTS OF
AmeriTitle

This sketch is furnished
for information purposes
only to assist in property
location with reference to
streets and other parcels.
No representation is
made as to accuracy and
the Company assumes no
liability for any loss
occurring by reason
of reliance thereon.

EXHIBIT _D_

PAGE _4_ OF _4_